# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ROBERT A. STOLPMANN,**

        **Plaintiff,**

v.                                           **Case No: 6:18-cv-293-Orl-37DCI**

**CARL LENTZ, IV, CITY OF
DAYTONA BEACH and REALTY
PROS ASSURED,**

        **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:** MOTION TO PROCEED IN FORMA PAUPERIS (Doc. 26)
>
> **FILED:** June 1, 2018
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**, the amended complaint be **DISMISSED without prejudice**, and the case **CLOSED**.

**I.    Background**

Plaintiff filed this action *pro se* against Carl Lentz IV (Lentz), Realty Pros Assured (RPA), and the City of Daytona Beach (Daytona Beach) (collectively, Defendants). Doc. 1. The undersigned summarized the allegations in the Complaint as follows:

> Plaintiff has owned and operated a real estate firm in the Daytona Beach area for several years. In March 2014, Plaintiff entered into an agreement for the exclusive right to list a piece of real property for sale (Agreement). Lentz was employed as a real estate broker by RPA and served as a city commissioner for Daytona Beach around the time Plaintiff entered into the Agreement. Plaintiff alleged that Lentz

> "interfered" with the Agreement "by trying to induce the client to reduce their asking price." Specifically, Plaintiff alleged that Lentz acted in concert with Daytona Beach to spread false and misleading information about Plaintiff's business qualifications and integrity.

Doc. 23 at 1 (citations omitted). Based on the allegations in the Complaint, Plaintiff claimed that Lentz and Daytona Beach tortiously interfered with his business relations in violation of Florida law (Count I) and violated his "Civil Rights" under 42 U.S.C. § 1983 (Count II). Doc. 1 at 5-6.[1]

Plaintiff moved to proceed *in forma pauperis*. Doc. 2. The undersigned reviewed Plaintiff's motion to proceed *in forma pauperis* and the Complaint pursuant to 28 U.S.C. § 1915 and entered an order finding that while Plaintiff was a pauper he failed to state a claim under § 1983. Doc. 23 at 3-6. Thus, the undersigned found that Plaintiff's failure to state a federal claim deprived the Court of subject matter jurisdiction, and, as a result, dismissed the Complaint with leave to file an amended complaint. *Id*.

Plaintiff filed a timely amended complaint and a renewed motion to proceed *in forma pauperis*. Docs. 25 (the Amended Complaint); 26 (the Motion).

The Amended Complaint contains significantly more allegations than the Complaint, but the gravamen of Plaintiff's amended pleading remains largely unchanged. *Compare* Doc. 1 *with* Doc. 25. First, Plaintiff claims that Defendants tortiously interfered with Plaintiff's business relations in violation of Florida law (Count I). Doc. 25 at 9-16. Second, Plaintiff claims that the "International Speedway Coalition," which includes Defendants and nonparties, engaged in a scheme to have "everyone working collaboratively toward one vision" to improve International Speedway Boulevard, which is the street where Plaintiff's client's real property is located. *Id*. at 17. Plaintiff alleges that this purported scheme constitutes a "policy" and that:

---

[1] Plaintiff did not mention RPA in Counts I or II of the Complaint. *See* Doc. 1 at 5.

> [The] "POLICY" violates under "The Color of Law" the Plaintiff[']s Civil Rights. The creation of this Monopoly for a better word in fact disrupts the Rights of the Property owners as well, as they are all compelled under the above mentioned "TRIANGLE" of Power.

*Id*.  Thus, based on these allegations, Plaintiff claims that Defendants violated his "civil rights under the color of law" in violation of 18 U.S.C. § 242 and 42 U.S.C. § 1983 (Count II).  *Id*. at 16-18.  Third and finally, Plaintiff claims, for the first time in this case, that Daytona Beach violated his "civil rights" during several public hearings, alleging:

> The Plaintiff Robert Stolpmann has appeared many times before the Daytona Beach City Commission and advocated for the Clients/Bittorf Family as we were held at siege from the endless layers of MUNICPAL Warfare against our Civil Rights as it related to the "Highest and Best Use" for the LISTING Property.
>
> The Plaintiff Robert Stolpmann made a series of presentations with his allotted 2.5 minutes of Public Comment/Civic Karaoke sic.  Those presentations will be central to the alleged Civil Right violation of the Plaintiff's First Amendment rights.  The new "POLICY" documented in the above Exhibits #16 and #17 violates not only the Plaintiff's civil rights, but that of any other CITIZEN who may choose to speak to the City of Daytona Beach Commission ON or OFF the agenda.

*Id*. at 20.  Thus, based on these allegations, Plaintiff appears to claim that Daytona Beach has unlawfully impeded his right to free speech in violation of his "First Amendment rights" and 18 U.S.C. § 242.  *Id*.

The undersigned must now review the Amended Complaint and Motion pursuant to 28 U.S.C. § 1915 to determine whether the case may proceed.

## II.     Standard of Review

The Court must conduct a two-step inquiry when a plaintiff files a complaint and seeks leave to proceed *in forma pauperis*.  First, the Court must evaluate the plaintiff's financial status and determine whether he is eligible to proceed *in forma pauperis*.  28 U.S.C. § 1915(a)(1).  Second, once the Court is satisfied that plaintiff is a pauper, the Court must review the complaint pursuant to § 1915(e)(2) and dismiss the complaint if the action is frivolous or malicious, the

complaint fails to state a claim on which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief. *Id*. at § 1915(e)(2)(B)(i-iii).[2] The Court must also dismiss the complaint if it determines that it has no subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(h)(3); *see Davis v. Ryan Oaks Apartment*, 357 F. App'x 237, 238-39 (11th Cir. 2009).[3] The Court must liberally construe the complaint when conducting the foregoing inquiry, *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998), but the Court is under no duty to rewrite the complaint to establish subject matter jurisdiction, avoid frivolousness, or state a claim upon which relief may be granted. *See Campbell v. Air Jamaica, Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

### III.   Discussion

The undersigned again finds that Plaintiff is a pauper. However, Plaintiff has again failed to state a federal cause of action upon which relief may be granted.

Plaintiff attempts to assert a state law claim for tortious interference (Count I) and two federal law claims (Counts II and III) that form the basis for the Court's subject matter jurisdiction. Therefore, the undersigned will consider whether Plaintiff has stated claims upon which relief may be granted as to Counts II and III.

#### A.   18 U.S.C. § 242

Plaintiff claims that Defendants violated 18 U.S.C. § 242, Doc. 25 at 16-18, 20, which serves as a criminal counterpart to § 1983. *Fundiller v. Cooper City*, 777 F.2d 1436, 1439 (11th

---

[2] The statute governing proceedings i*n forma pauperis* references actions instituted by prisoners, *see* 28 U.S.C. § 1915, but has been interpreted to apply to all litigants requesting leave to proceed *in forma pauperis*. *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004).

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

Cir. 1985). This criminal statute, however, does not create a private cause of action. *Id.* (affirming the district court's dismissal of plaintiff's § 242 claim since there is "no implied private right of action under 18 U.S.C. § 242"); *see also Harris v. Albany Police Dept.*, 2014 WL 1773866, at *1 (M.D. Ga. May 2, 2014) (citing authority reaching same conclusion). Therefore, Plaintiff cannot state a claim under § 242.

### B.  42 U.S.C. § 1983

Plaintiff alternatively claims that Defendants are liable under § 1983 for violating his "civil rights" (Count II), and Daytona Beach is liable under § 1983 for violating his "First Amendment rights" (Count III). Doc. 25 at 16-18, 20.

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

Private parties are generally not considered state actors for § 1983 purposes. *Id.* Private parties, however, can be held liable under § 1983 if they are shown to have acted under the color of state law. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (discussing the tests used to determine whether a private party was acting under the color state law).[4] Further, "[a] municipality may only be held liable under § 1983 when one of its

---

[4] The Eleventh Circuit employs the following tests in determining whether a private party was acting under the color of state law when he allegedly deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States: "(1) the public function test, which asks whether the private actors were performing functions traditionally the exclusive prerogative of the state; (2) the state compulsion test, which applies to situations where the government coerced or significantly encouraged the unconstitutional actions at issue; and (3) the nexus/joint action test, which applies where the state and the private party were joint participants in the common enterprise." *Boles v. Riva*, 565 F. App'x 845, 847 (11th Cir. 2014) (citing *Focus on the Family*, 344 F.3d at 1277).

policies causes a constitutional injury." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1188 (11th Cir. 2011) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

1. **Count II**

Under Count II of the Amended Complaint, Plaintiff alleges that Defendants, along with other members of the International Speedway Coalition, engaged in a scheme to have "everyone working collaboratively toward one vision" to improve International Speedway Boulevard. Doc. 25 at 17. Plaintiff alleges that this scheme constitutes a policy that Defendants adopted to effectively preclude many people, including Plaintiff and his client (who owns property along International Speedway Boulevard), from being a part of and taking advantage of improvements made to and along International Speedway Boulevard. *Id.* Plaintiff claims that this policy violates his "civil rights under the color of law" and "disrupts the Rights of the Property owners[.]" *Id*. Plaintiff, however, does not appear to allege that the policy violated any of his property rights. *See id*.

Plaintiff's allegations under Count II again fall short of stating a claim under § 1983. First, Plaintiff has again failed to include any allegations establishing that Lentz and RPA acted under color of law, and not as private actors, when they took part in the alleged scheme related to the development of International Speedway Boulevard. *See* Doc. 25 at 16-18.[5] Second, Plaintiff alleges that Defendants, particularly Daytona Beach, adopted a policy to work with specific individuals and entities to improve International Speedway Boulevard and the properties along

---

[5] There are no allegations that Lentz acted in his official capacity as a city commissioner for Daytona Beach during the scheme that allegedly deprived Plaintiff of his civil rights. *See* Doc. 25 at 16-18.

that road. *Id*. at 17. But even if Plaintiff is correct that the foregoing is a "policy" as contemplated by *Monell* – and the undersigned does not agree that it is – there is no indication as to how that policy "cause[d] a constitutional injury." *Am. Fed'n of Labor & Cong. of Indus. Orgs.*, 637 F.3d at 1188. In other words, to the extent the Court were to find that this was a policy, there are no allegations describing how Plaintiff was harmed by Daytona Beach's implementation of the policy. *See id*. at 16-18. Thus, the undersigned finds that Plaintiff again failed to articulate a policy enacted and enforced by Defendants that violated Plaintiff's civil rights. Third, Plaintiff again simply alleged that his "civil rights" have been violated and has not alleged the specific right secured by the Constitution or federal law (except for 18 U.S.C. § 242, which the undersigned addressed above) that Defendants allegedly violated. *Id*. In light of these deficiencies, the undersigned finds that Plaintiff has failed to state a claim for relief under § 1983 in Count II of the Amended Complaint.

### 2. Count III

In Count III of the Amended Complaint, Plaintiff alleges that he made a series of presentations during Daytona Beach city commission (the Commission) meetings concerning his clients. Doc. 25 at ¶¶ 99-100. Plaintiff seemingly alleges that recent changes to the format of the Commission's public meetings violates his First Amendment rights. *Id*. at ¶ 100. Plaintiff, however, does not identify any specific changes that violate his First Amendment rights. *See id*. Instead, Plaintiff generally cites to a newspaper article and an opinion piece, both of which discuss the recent changes to the Commission's public meetings. *Id*. at ¶ 98 (citing Docs. 25-15; 25-16).

The Eleventh Circuit has stated the following with respect to arguments that a city council's rules of procedure violate the First Amendment:

> "The freedom of expression protected by the First Amendment is not inviolate; the Supreme Court has established that the First Amendment does not guarantee

> persons the right to communicate their views 'at all times or in any manner that may be desired.'" *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989) (quoting *Heffron v. International Soc'y for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)).  This Court has held in *Jones* that a city commission meeting is one forum where speech may be restricted "'to specified subject matter.'" *Jones*, 888 F.2d at 1332 (quoting *City of Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 176 n. 8, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976)).  Stated differently, city commission meetings are "limited" public fora-*i.e.*, "a forum for certain groups of speakers or for the discussion of certain subjects." *Crowder v. Housing Auth. of City of Atlanta*, 990 F.2d 586, 591 (11th Cir. 1993) (citing *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 46 n.7, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)).  As such, "the government may restrict access to limited public fora by content-neutral conditions for the time, place, and manner of access, all of which must be narrowly tailored to serve a significant government interest." *Id*. (citing *Perry*, 460 U.S. at 45-46, 103 S.Ct. 948).

*Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 802-803 (11th Cir. 2004).

Plaintiff's allegations under Count III fall short of stating a claim that Daytona Beach violated his First Amendment rights.  While Plaintiff alleges that the Commission's new public hearing format violates his "civil rights," he does not identify any specific aspect of the new public hearing format that violated his First Amendment right.  *See* Doc. 25 at 20.  Plaintiff's reference to the newspaper and opinion articles does not cure this deficiency.  Instead, the articles highlight the problem with Plaintiff's pleadings and allude to several alleged format changes, including changes to the order in which the hearings will proceed.  Docs. 25-15; 25-16.  Plaintiff does not allege which of the changes discussed in the articles violates his First Amendment rights.  *See* Doc. 25 at 20.  At base, Count III contains a legal conclusion – a violation of First Amendment rights – with no factual allegations concerning what that violation was or how the Defendants caused those unspecified violations.  In light of these deficiencies, the undersigned finds that Plaintiff has failed to state a claim for relief under Count III of the Amended Complaint.

### 3. Dismissal

The Court purportedly has jurisdiction over this case based on Plaintiff's federal claims, specifically, Counts II and III of the Amended Complaint. Plaintiff, however, has failed to state a claim under Counts II and III of the Amended Complaint. Plaintiff's failure to state a claim for relief under Counts II and III consequently deprives the Court of subject matter jurisdiction. Thus, the Amended Complaint is due to be dismissed. The only question remaining is whether Plaintiff should be given an opportunity to file a second amended complaint.

A *pro se* plaintiff must generally be given one chance to amend his complaint if the district court dismisses the complaint. *Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003). A district court, however, need not allow an amendment where amendment would be futile. *Cornelius v. Bank of America, NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Id*.

The undersigned entered an order identifying the issues with the Complaint and, consistent with Eleventh Circuit precedent, granted Plaintiff leave to file an amended complaint so that he could state a federal claim upon which relief could be granted. Doc. 23. In response, Plaintiff filed an Amended Complaint containing his original claims, as well as an additional federal claim alleging that Daytona Beach violated his First Amendment rights. Doc. 25. Plaintiff, however, has again failed to state a federal cause of action upon which relief can be granted.

The undersigned finds that granting Plaintiff leave to file a second amended complaint would be futile for two reasons. First, Plaintiff will not be able to assert a claim that Defendants violated 18 U.S.C. § 242 because there is no private cause of action under that statute. Second,

despite the Court's order dismissing the Complaint, Plaintiff's allegations in Count II are still not sufficient to state a claim against Defendants under § 1983 and there is nothing to suggest that providing Plaintiff with a second opportunity will lead to a different result.

Finally, while Plaintiff may theoretically be able to state a claim under Count III of the Amended Complaint, the undersigned finds that the Court should not permit Plaintiff to file a second amended complaint in *this* case solely on that basis. A plaintiff may generally bring as many claims as he has against a single party, Fed. R. Civ. P. 18(a), "[b]ut a plaintiff may join multiple defendants in a single action only if the right to relief asserted against them arises 'out of the same transaction, occurrence, or series of transactions or occurrences' and if 'any question of law or fact common to all defendants will arise in the action.'" *Smith v. Owens*, 625 F. App'x 924, 928 (11th Cir. 2015) (citing Fed. R. Civ. P. 20(a)). Counts I and II of the Amended Complaint concern Defendant's tortious interference with Plaintiff's business and, stemming from the interference, a violation of Plaintiff's "civil rights" affecting his business. Doc. 25 at 9-20. The third count of the Amended Complaint purports to challenge the constitutionality of a recently enacted policy governing Daytona Beach's city commission meetings. Doc. 25 at 20-21. Thus, Count III does not involve Defendants Lentz or RPA and bears little, if any, relation to the facts giving rise to and the issues of law in Counts I and II of the Amended Complaint. Thus, the undersigned finds that Plaintiff should not be permitted to file another amended complaint in this action solely to state a claim that Daytona Beach violated his First Amendment rights. *See Smith*, 625 F. App'x at 928 (affirming the district court's dismissal of prisoner's § 1983 complaint "because Rule 20(a) of the Federal Rules of Civil Procedure precludes a plaintiff from joining unrelated claims against various defendants unless the claims arose out of the same transaction.").

**IV.    Conclusion**

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. 26) be **DENIED**;

2. The Amended Complaint (Doc. 25) be **DISMISSED without prejudice**; and

3. The Clerk be directed to close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on August 22, 2018.

_____
DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy